UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITCHELL QUINTIN GRADY, CDCR #AS-8775,<br><br>                       Plaintiff,<br>vs.<br><br>MARIO ALONZO, et al.,<br><br>                       Defendants. | Case No. 3:20cv1273-MMA-WVG<br><br>**ORDER DISMISSING CLAIMS PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b);**<br><br>**DIRECTING U.S. MARSHAL TO EFFECT SERVICE UPON DEFENDANTS PURSUANT TO 28 U.S.C. § 1915(d) AND FED. R. CIV. P. 4(c)(3)** |

Plaintiff Mitchell Quintin Grady, a state prisoner currently incarcerated at Kern Valley State Prison and proceeding pro se in this civil rights action pursuant 42 U.S.C. § 1983, alleges that five officials at Centinela State Prison, where he was formerly incarcerated, violated his rights in connection with an altercation that occurred in February 2020. *See generally* Doc. No. 10; *see also* Doc. No. 12 (notice of change of address).

The Court previously granted Plaintiff's motion to proceed in forma pauperis ("IFP"), dismissed Plaintiff's initial complaint for failure to state claim pursuant to 28 U.S.C. Section 1915(e)(2) and Section 1915A(b), and granted Plaintiff leave to amend his

claims. *See* Doc. No. 9 at 19. Plaintiff timely submitted a First Amended Complaint. *See generally* Doc. No. 10.

## I.     Screening pursuant to 28 U.S.C. Section 1915(e)(2) and Section 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his First Amended Complaint requires a pre-answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these statutes, the Court sua sponte must dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. Section 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. Section 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under Section 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to Section 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense." *Id.*  The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard.  *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

      B.  <u>Plaintiff's Factual Allegations</u>

The claims in this arise out of an alleged altercation between Plaintiff and Defendant Alonzo, a correctional lieutenant, that occurred on February 11, 2020. *See* Doc. No. 10, at 1.  As Plaintiff was leaving the dining hall that morning, Defendant Alonzo searched Plaintiff.  *See id.*  During that search, Defendant Alonzo "disrespected [Plaintiff's] Rastafarian religious faith by stealing [Plaintiff's] religious necklace off the ground and then wearing it around his neck."  *See id.* at 1, 3.  Plaintiff does not describe what happened next, but the incident evidently culminated in Plaintiff throwing a cup.  *See id.* at 3.  As best as the Court can discern, Plaintiff argues that he threw the cup at the ground, while Defendants largely contended both at the time and in subsequent disciplinary proceedings that Plaintiff threw the cup at Defendant Alonzo, hitting him.  *See id.*  While Plaintiff was in a holding cage after the altercation, Defendant Dominguez allegedly mocked Plaintiff's Rastafarian faith by playing Bob Marley's music from his office computer and laughing at Plaintiff.  *See id.* at 4.

Plaintiff was sent to administrative segregation "to endure unusual punishment," received a "'felony' charge" of "battery on a peace officer with a weapon," and received a rule violation report ("RVR"), which resulted in "a SHU term of maximum 11 months, and losing 150 days of good time credit that can't be gotten back." *See id.* at 3.  According to Plaintiff, "Alonzo d[id] all of this based on [Plaintiff's] race as a[n] African-American/Black person."  *Id.*

Following the incident, Plaintiff alleges that Defendants Alonzo, Dominguez, Romero, Urbina, and Veliz, committed "civil conspiracy" and "fabricat[ed] evidence and racially discriminat[ed]" against Plaintiff by falsely reporting that Plaintiff threw his cup at Defendant Alonzo.  *See id.*  In support of this claim, Plaintiff cites a number of

allegedly inconsistent or false statements made by these Defendants in interviews or reports after the incident. *See id.* at 3-6. First, Defendant Dominguez allegedly made inconsistent statements in an interview about whether Plaintiff threw the cup at the ground or at Defendant Alonzo. *See id.* at 4. Second, Defendant Romero allegedly falsely stated that Plaintiff "los[t] control of himself as he threw his brown state issued cup towards Lt. Mario Alonzo striking him on the right foot." *See id.* This statement contradicted one that Romero made to Plaintiff after the incident, when Romero allegedly acknowledged that Plaintiff did not, in fact, hit Defendant Alonzo with the cup, and a later statement Romero made claiming to not remember what happened on the date of the alleged incident. *See id.* at 4-5. Third, Defendant Urbina allegedly made inconsistent statements that Plaintiff threw the cup at Alonzo, that Plaintiff used his right hand to throw the cup, and that he "'did not see where the brown cup landed.'" *See id.* at 5. Finally, Defendant Veliz allegedly falsely stated in an interview that Plaintiff threw the cup at Defendant Alonzo, but "never wrote a report . . . in reference to [Plaintiff] throwing a cup at all, let alone towards Lt. Mario Alonzo . . . ." *See id.* at 6. According to Plaintiff, each of these Defendants' actions were motivated by racism. *See id.* at 3-6.

Plaintiff's First Amended Complaint does not contain any demand for relief, but Plaintiff sues Defendants in their individual capacities. Accordingly, the Court liberally construes his pleading as seeking damages.

C. <u>Analysis</u>

To state a claim under 42 U.S.C. Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015).

Plaintiff appears to allege that Defendants' conduct violated his Fourteenth Amendment rights to due process and equal protection. *See* Doc No. 2, at 7 (stating that Plaintiff's civil rights were violated by "racial discrimination/civil conspiracy.").

Nevertheless, in the body of his First Amended Complaint, Plaintiff also invokes the phrase "unusual punishment," suggesting he may be asserting an Eighth Amendment claim, and refers to actions by Defendants Alonzo and Dominguez that were disrespectful to Plaintiff's religious faith, possibly seeking to assert First Amendment claims. *See id.* at 1, 3-4. Accordingly, the Court liberally construes Plaintiff's First Amended Complaint as attempting to assert claims for violations of the Fourteenth, Eighth, and First Amendments.

1. Fourteenth Amendment – Due Process

As discussed, Plaintiff alleges that Defendants conspired together to fabricate evidence supporting disciplinary charges against Plaintiff stemming from the incident with Defendant Alonzo. *See generally* Doc. No. 10, at 3-6. As explained in the Court's Order dismissing Plaintiff's initial Complaint, "[t]his claim is best analyzed under the [due process clause of the] Fourteenth Amendment." *See* Doc. No. 9, at 15.

The due process clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a claim for violations of procedural due process, Plaintiff must allege "'(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *See Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)). Although a prisoner is entitled to procedural due process protections in disciplinary proceedings, those protections "adhere only when the disciplinary action implicates a protected liberty interest in some 'unexpected [manner]' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)).

Plaintiff's procedural due process claims suffer from many of the same defects the Court identified in its Order dismissing his initial Complaint. First, as numerous other courts have concluded, "[t]he issuance of a false RVR, alone, does not state a claim under

section 1983." *See Murschel v. Paramo*, No. 3:17-CV-1142 BTM (AGS), 2018 WL 539159, at *4 (S.D. Cal. Jan. 22, 2018) (citing *Dawson v. Beard*, No. 1:15-CV-1867 DLB, 2016 WL 1137029, at *5-6 (E.D. Cal. Mar. 23, 2016)); *see also, e.g.*, *Solomon v. Meyer*, No. 11-CV-2827 JST (PR), 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014) ("[T]here is no due process right to be free from false disciplinary charges."); *Chavira v. Rankin*, No. C 11-5730 CW (PR), 2012 WL 5914913, at *1 (N.D. Cal. Nov. 26, 2012) ("A prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." (citing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986))).  Second, "[a]s long as a prisoner receives procedural due process during his disciplinary hearing, a prisoner's allegation of a fabricated prison disciplinary charge fails to state a cognizable claim for relief under § 1983."  *Harper v. Costa*, No. CIV S-07-2149 LKK DAD P, 2009 WL 1684599, at *2 (E.D. Cal. June 16, 2009) (collecting cases).

Plaintiff once again does not allege that he was denied any of the due process protections to which he was entitled, for example, "the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken."  *See Serrano*, 345 F.3d at 1077 (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974)); *see also* Doc. No. 9, at 16.  As a result, any procedural due process claims against Defendants must be dismissed for failure to state a claim.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1).

To the extent Plaintiff alleges Defendants violated his due process rights through a conspiracy, those claims also fail.  To establish a conspiracy under Section 1983, Plaintiff must allege "(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement."  *See Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010) (quotation omitted).  Aside from labeling each Defendants' actions part of a "civil

conspiracy," Plaintiff does not allege either an express or implied agreement among the Defendants to do anything, let alone to violate his constitutional rights. *See, e.g.*, Doc. No. 10, at 3 ("Mario Alonzo commit[t]ed 'civil conspiracy,' by fabricating evidence and racially discriminating, with the following persons: D. Dominguez, G. Romero III, M. Urbina, and J. Veliz."). Accordingly, any conspiracy claim against these Defendants is dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

The Court finds, however, that the additional allegations in Plaintiff's First Amended Complaint are sufficient to state a due process claim premised on the Ninth Circuit's decision in *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001), that surpasses the "low threshold" set for sua sponte screening. *See Wilhelm*, 680 F.3d at 1123; *see also Chappell v. Bess*, No. 2:01-cv-01979-KJN P, 2012 WL 3276984, at *21-23 (E.D. Cal. Aug. 9, 2012) (denying summary judgment on fabrication of evidence claims by prisoner against prison officials that led to allegedly "unwarranted disciplinary proceedings and criminal prosecution, and [plaintiff being] retained in administrative segregation for more than two years . . . ."). In *Devereaux*, the Ninth Circuit held that "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *See Devereaux*, 263 F.3d at 1074-75.

"To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *See Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017). Plaintiff alleges that he received "a 'felony' charge" for the February 11, 2020 incident in addition to other sanctions within the prison disciplinary system. *See* Doc. No. 10, at 3; *see also id.* at 3-5 (asserting that Defendants Alonzo, Dominguez, and Romero's alleged fabrications of evidence caused Plaintiff to face a felony charge). "[A] § 1983 plaintiff need not be convicted on the basis of the fabricated evidence . . . being criminally charged is enough." *Caldwell v. City & Cnty. of San Francisco*, 889 F.3d 1104, 1115 (9th Cir. 2018) (citing *Devereaux*, 263 F.3d at 1074-75).

7

Although Plaintiff does not specifically allege that Defendants Urbina and Veliz's alleged fabrications of evidence caused him to face felony charges, the Court liberally construes Plaintiff's First Amended Complaint as stating claims sufficient to survive screening against these Defendants on the same basis. *See* Doc. No. 10, at 5-6.  Nevertheless, the Court cautions Plaintiff that the sua sponte screening process is "cumulative of, not a substitute for, any subsequent [motion to dismiss] that the defendant may choose to bring." *See Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

                    2.   Fourteenth Amendment – Equal Protection

Plaintiff further alleges that Defendants' alleged actions constituted racial discrimination. *See* Doc. No. 10, at 3-6.  As the Court explained in its previous order, these claims must be analyzed under the Fourteenth Amendment's equal protection clause, which "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also* Doc. No. 9, at 11.  To allege a claim of racial discrimination in violation of the equal protection clause, Plaintiff must allege that Defendants "acted in a discriminatory manner and that the discrimination was intentional." *FDIC v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991) (citations omitted).  "In order to state a § 1983 claim based on a violation of the equal protection clause of the Fourteenth Amendment, a plaintiff must establish that defendants acted with intentional discrimination against a class of inmates which includes plaintiff." *Parker v. Kramer*, No. CVF025117 AWIDLBP, 2005 WL 1343853, at *6 (E.D. Cal. Apr. 28, 2005) (citing *Lowe v. City of Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1985); *Henderson*, 940 F.2d at 471)).

Plaintiff's racial discrimination claims must again be dismissed for the same reason the Court cited in its Order dismissing his initial complaint: Plaintiff "has not alleged sufficient 'factual content that allows the court to draw the reasonable inference that [Defendants are] liable for the misconduct alleged.'" *See* Doc. No. 9, at 11 (quoting *Iqbal*, 556 U.S. at 678).  Although Plaintiff repeatedly asserts that each Defendant

fabricated evidence and otherwise violated Plaintiff's right "based on [Plaintiff's] race as a[n] African-American/Black person," *see, e.g.*, Doc. No. 10, at 5, these "'naked assertion[s]' devoid of 'further factual enhancement,'" are too conclusory to allege intentional racial discrimination on Defendants' part. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Plaintiff fails to allege any facts suggesting that Defendants acted in a discriminatory manner or that Plaintiff was treated differently from any other inmate, let alone that any such difference in treatment was based on race. As a result, Plaintiff's claim of racial discrimination must be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b).

### 3. Eighth Amendment

Although Plaintiff does not expressly cite the Eighth Amendment in his First Amended Complaint, he does assert that after the February 11, 2020 incident with Defendant Alonzo, he was sent to "Ad-Seg to endure unusual punishment." *See* Doc. No. 10, at 3. This conduct is insufficient to state a claim for violation of the Eighth Amendment, which broadly prohibits cruel and unusual punishment. *See generally* U.S. Const. Am. VII. "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious,' a prison official's act or omission must result in the denial of 'the minimum civilized measure of life's necessities . . . .'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Second, "[t]o violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind,'" and act with "'deliberate indifference' to inmate health or safety . . . ." *Id.* (internal citations omitted) (quoting *Wilson*, 501 U.S. at 302-03). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Id.*

Simply sending Plaintiff to administrative segregation for an unspecified period of time following the incident to "endure unusual punishment" that is not described in the

First Amended Complaint falls far short of alleging an "objectively, sufficiently serious" act denying "the minimum civilized measure of life's necessities . . . ," that would violate the Eighth Amendment. *Farmer*, 511 U.S. at 834 (internal quotation marks and citations omitted). Additionally, Plaintiff does not allege deliberate indifference to his health or safety. As a result, any Eighth Amendment claims are dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b).

### 4. First Amendment

Finally, Plaintiff alleges two acts implicating his Rastafarian religious faith. First, while searching Plaintiff, Defendant Alonzo allegedly stole Plaintiff's "religious necklace off the ground and . . . then w[ore] it around his own neck." *See* Doc. No. 10, at 1, 3. Second, while Plaintiff was in a holding cage, Defendant Dominguez allegedly mocked Plaintiff's faith by "blasting 'Bob Marley' music from his office computer" and laughing at Plaintiff. *See id.* at 3-4. These incidents, unprofessional as they might be, do not state claims for violations of Plaintiff's First Amendment rights.

The First Amendment bars the government from, among other things, "making a law prohibiting the free exercise of religion." *Hartmann v. Cal. Dep't Corrs. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). Although Plaintiff does not specifically invoke it, the Court liberally construes Plaintiff's Complaint as attempting to state claims under both the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). *See* 42 U.S.C. § 2000cc-1(a); *see also Alvarez v. Hill*, 518 F.3d 1152, 1157-58 (9th Cir. 2008) (noting that a prisoner need not identify RLUIPA as a cause of action in order to state a claim based upon that law). Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability" absent a showing that the burden imposed is "in furtherance of a compelling government interest" and "is the least restrictive means of furthering . . . that interest." 42 U.S.C. § 2000cc-1(a).

Plaintiff fails to allege a claim under either the First Amendment or RLUIPA because he has not alleged how, if at all, "the government action in question substantially burdens [Plaintiff's] practice of [his] religion." *Jones v. Williams*, 791 F.3d 1023, 1031-32 (9th Cir. 2015). The acts Plaintiff describes do not "have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on [Plaintiff] to modify his behavior and to violate his beliefs." *See id.* (internal citations, quotation marks, and alterations omitted); *see also Hartmann*, 707 F.3d at 1124-25 (explained that a "'substantial burden'" sufficient to state a RLUIPA claim is a "'significantly great restriction or onus upon [religious] exercise,'" and "[i]n the context of a prisoner's constitutional challenge to institutional policies, [the Ninth Circuit] has held that a substantial burden occurs 'where the state . . . denies [and important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1039 (9th Cir. 2004); *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005))). Plaintiff has not alleged how being deprived of his necklace[1] or being mocked for his faith placed a substantial burden on his religious exercise, or how, if at all, the conduct alleged "prevented him from fulfilling the commandments" of Rastafarianism. *See Wolcott v. Bd. of Rabbis*, 738 F. App'x 538, 539 (9th Cir. 2018).

As a result, Plaintiff's First Amendment and RLUIPA claims are dismissed for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b).

### 5. Official Capacity Claims

Plaintiff identifies each Defendant as being sued in both their individual and official capacities. *See* Doc. No. 10, at 2. As mentioned previously, although Plaintiff's

---

[1] Additionally, and for the reasons cited in the Court's prior order, Plaintiff cannot state a separate claim for the deprivation of his personal property (i.e. his necklace). *See* Doc. No. 9, at 16-17.

First Amended Complaint contains no demand for relief, the Court liberally construes his pleading as seeking damages.

To the extent Plaintiff seeks damages, he may not do so in a suit against Defendants in their official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). As a result, Plaintiff's official capacity claims must be dismissed sua sponte for failure to state a claim because: (1) there is no conduct by a "person" as required for a claim under Section 1983, and (2) the Eleventh Amendment bars suits for damages against state officials sued in their official capacity absent an express waiver of immunity by Congress or the state, neither of which is present under these circumstances. *See id.*; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *see also* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1).

D.  Leave to Amend

Because Plaintiff has already been provided a short and plain statement of his pleading deficiencies, as well as an opportunity to amend those claims to no avail, the Court finds that granting further leave to amend on the claims dismissed in this Order would be futile. *See Gonzalez v. Planned Parenthood*, 759 F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of . . . leave to amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." (internal quotation marks omitted) (second alteration in original)).

**II.  Conclusion and Orders**

For the reasons discussed, the Court **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

The Court **DISMISSES** Plaintiff's claims against Defendants in their official capacities and his claims under the First Amendment, the Eighth Amendment, the Fourteenth Amendment's equal protection clause, and his conspiracy and procedural claims under the due process clause of the Fourteenth Amendment, without prejudice sua sponte for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. Sections 1915(e)(2)(B)(ii) and 1915A(b)(1) and without further leave to amend. As such, the only remaining claim is Plaintiff's Fourteenth Amendment due process claim based on the purported fabrication of evidence by Defendants Alonzo, Dominguez, Romero, Urbina, and Veliz.

Accordingly, the Court **DIRECTS** the Clerk to terminate as parties to this action Defendants Soriano, Carranza, Madden, Galeana, Briceno, Livsey, Ruiz, Johnson, Blackstock, Bustos-Gutierrez, and Parkhill, all of whom Plaintiff chose to exclude from his First Amended Complaint. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

The Court further **DIRECTS** the Clerk to issue a summons as to Plaintiff's First Amended Complaint, Doc. No. 10, upon Defendants Alonzo, Dominguez, Romero, Urbina, and Veliz and forward it to Plaintiff along with a blank U.S. Marshal Form 285. In addition, the Clerk will provide Plaintiff with a certified copy of this Order, a certified copy of his Complaint, and the summons so that he may serve Defendants. Upon receipt of this "IFP Package," Plaintiff must complete the Form 285 as completely and accurately as possible, include an address where Defendants may be served, *see* S.D. Cal. Civ. L.R. 4.1.c, and return it to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package.

The Court **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon Defendants as directed by Plaintiff on the USM Form 285 provided to

him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

The Court further **ORDERS** Defendants, once served, to reply to Plaintiff's Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. Sections 1915(e)(2) and 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond).

Finally, the Court **ORDERS** Plaintiff, after service has been effectuated by the U.S. Marshal, to serve upon Defendants, or, if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on the Defendants or Defendants' counsel, and the date of that service. *See* S.D. Cal. Civ. L.R. 5.2. Any document received by the Court which has not been properly filed with the Clerk, or which fails to include a Certificate of Service upon Defendants, may be disregarded.

**IT IS SO ORDERED**.

DATE: December 21, 2020

_____
HON. MICHAEL M. ANELLO
United States District Judge